## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| | * | |
| **RONALD MILOR, JR., et al.,** | * | |
| | * | |
| **Plaintiffs,** | * | |
| | * | **Civ. No. MJM-24-792** |
| v. | * | |
| | * | |
| **OASIS HOTELS & RESORTS, S.A.** | * | |
| **de C.V., et al.,** | * | |
| | * | |
| **Defendants.** | * | |
| | * | |

\* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION AND ORDER

A group of plaintiffs initiated this civil action against Oasis Hotels & Resorts, S.A. de C.V. ("Oasis") and Interacciones Zafiro S.A. de C.V., d/b/a Grand Oasis Cancun ("Grand Oasis Cancun" or the "Resort") (collectively, "Defendants"), bringing claims for survival and wrongful death under Maryland law. ECF No. 1 ("Compl."). The plaintiffs are Ronald Milor, Jr., individually as the surviving father and as personal representative of the Estate of Kayley Milor; Tien Milor, individually as the surviving mother of Kayley Milor; Ronald Millor, III, individually as the surviving brother of Kayley Milor; Hannah Milor, individually as the surviving sister of Kayley Milor; and the Estate of Kayley Milor (collectively, "Plaintiffs"). Compl. ¶¶ 1–3.

This matter is before the Court on Defendants' Motions to Dismiss or, in the Alternative, for Summary Judgment, ECF Nos. 13 & 24, as well as Plaintiffs' Motions to Allow Limited Discovery, Defer Ruling on Defendants' Motions, and Issue Scheduling Orders, ECF Nos. 20 & 32. The motions are fully briefed, and no hearing is necessary to resolve them. *See* Loc. R. 105.6

1

(D. Md. 2025). For the reasons set forth below, the Court shall grant Defendants' motions, deny Plaintiffs' motions, and dismiss the Complaint for lack of personal jurisdiction.

## I.    BACKGROUND

The following facts are drawn from the Complaint. On March 21, 2022, Kayley Milor ("Kayley") checked into the Grand Oasis Cancun, "a hotel/resort" in Quintana Roo, Mexico that was operated and owned by Oasis. Compl. ¶¶ 5, 9. That same day, three male patrons of the Grand Oasis Cancun went to the Resort's private beach to swim in the adjacent ocean. *Id.* ¶ 10. Another beachgoing patron and a Resort lifeguard rescued the men after they nearly drowned in the undertow of the ocean. *Id.* The patron that assisted the rescue advised the lifeguard to close the beach due to the dangerous undertow and swimming conditions. *Id.* The lifeguard responded that he would not close the beach; he also did not warn other patrons of the Resort, including Kayley, of the dangerous swimming conditions. *Id.* ¶ 11. At approximately noon on March 22, 2022, Kayley went swimming in the ocean adjacent to the Resort's beach and drowned in the undertow. *Id.* ¶ 12. There were no Resort lifeguards on duty at the time. *Id.*

On March 18, 2024, Plaintiffs filed a Complaint against Defendants asserting wrongful death and survival claims based on allegations of negligence. ECF No. 1. Oasis was served on February 18, 2025, *see* ECF No. 10, and Grand Oasis Cancun was served on May 2, 2025, *see* ECF No. 14. Each defendant filed a consent motion for extension of time to respond to the Complaint, ECF Nos. 10 & 14, which was granted, ECF Nos. 12 & 15.

On May 2, 2025, Oasis filed a Motion to Dismiss or, in the Alternative, for Summary Judgment, arguing for dismissal based on lack of personal jurisdiction, failure to state a claim upon which relief can be granted, or forum non conveniens. ECF No. 13. Plaintiffs filed a response in opposition, ECF No. 19, and Oasis subsequently replied, ECF No. 27, and supplemented its reply,

ECF No. 30. On May 29, 2025, Plaintiffs filed a Motion to Allow Limited Discovery on the Issue of Personal Jurisdiction, to Defer Ruling on Oasis's Motion, and to Issue a Scheduling Order, ECF No. 20, which Oasis opposed, ECF No. 28.

On June 13, 2025, Grand Oasis Cancun filed a Motion to Dismiss or, in the Alternative, for Summary Judgment, advancing arguments similar to those in Oasis's motion, ECF No. 24, and then supplemented its motion, ECF No. 29. Plaintiffs filed a response in opposition, ECF No. 31, and Grand Oasis Cancun subsequently replied, ECF No. 36. On July 14, 2025, Plaintiffs filed a Motion to Allow Limited Discovery on the Issue of Personal Jurisdiction, to Defer Ruling on Grand Oasis Cancun's Motion, and to Issue a Scheduling Order, ECF No. 32, which Grand Oasis Cancun opposed, ECF No. 37.

## II.    STANDARD OF REVIEW

Defendants move to dismiss the case for lack of personal jurisdiction. "A Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction challenges the propriety of a particular court's exercise of power over a particular defendant." *Choice Pain & Rehab. Ctr., LLC v. Optum, Inc.*, Civ. No. DLB-24-2144, 2025 WL 948294, at *2 (D. Md. Mar. 28, 2025). Once such a challenge has been raised, it is generally resolved "as a preliminary matter." *Fidelis Cybersec., Inc. v. Partner One Cap., Inc.*, 771 F. Supp. 3d 614, 624 (D. Md. 2025) (quoting *Grayson v. Anderson*, 816 F.3d 262, 267 (4th Cir. 2016)).

"When personal jurisdiction is addressed under Rule 12(b)(2) without an evidentiary hearing, the party asserting jurisdiction has the burden of establishing a *prima facie* case of jurisdiction." *Hawkins v. i-TV Digitalis Tavkozlesi zrt.*, 935 F.3d 211, 226 (4th Cir. 2019). In conducting a "'*prima facie* case' analysis," "district court[s] must determine whether the facts proffered by the party asserting jurisdiction—assuming they are true—make out a case of personal

3

jurisdiction over the party challenging jurisdiction." *Id.* (citing *Sneha Media & Ent., LLC v. Associated Broad. Co. P Ltd.*, 911 F.3d 192, 196–97 (4th Cir. 2018)). "In determining whether a plaintiff meets this burden, . . . the scope of this Court's review is not limited to the pleadings, and the Court may appropriately consider affidavits submitted by the parties." *Troy Brave LLC v. Grantsville Truck & Trailer, LLC*, 692 F. Supp. 3d 516, 520 (D. Md. 2023) (citing *Hawkins*, 935 F.3d at 226). "[T]he Court must construe all relevant pleading allegations in the light most favorable to the plaintiff, assume credibility, and draw the most favorable inferences for the existence of jurisdiction[,]" but it "need not credit conclusory allegations in determining whether a plaintiff has met his burden of making a *prima facie* showing of personal jurisdiction." *Id.* at 520–21 (citation modified) (first quoting *Cleaning Auth., Inc. v. Neubert*, 739 F. Supp. 2d 807, 811 (D. Md. 2010), then quoting *Sonoco Prods. Co. v. ACE INA Ins.*, 877 F. Supp. 2d 398, 407 (D.S.C. 2012)).

"[A] federal district court may exercise personal jurisdiction [over a nonresident defendant] only if '(1) an applicable state long-arm statute confers jurisdiction and (2) the assertion of that jurisdiction is consistent with constitutional due process.'" *Orbita Telecom SAC v. Juvare LLC*, 606 F. Supp. 3d 240, 247 (D. Md. 2022) (quoting *Perdue Foods LLC v. BRF S.A.*, 814 F.3d 185, 188 (4th Cir. 2016)). "The Maryland long-arm statute authorizes the exercise of personal jurisdiction to the limits permitted by the Due Process Clause of the Fourteenth Amendment." *Id.* (citing *Perdue Foods*, 814 F.3d at 188). Because "Maryland's long-arm statute is coextensive with the due process clause of the Fourteenth Amendment," federal and state courts applying this statute have held "that [the] statutory inquiry merges with [the] constitutional inquiry." *Fidelis*, 771 F. Supp. 3d at 629 (citing *Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390, 396–97 (4th Cir. 2003)); *see also Dring v. Sullivan*, 423 F. Supp. 2d 540, 545 (D. Md. 2006);

4

*Stover v. O'Connell Assocs., Inc.*, 84 F.3d 132, 135–36 (4th Cir. 1996); *ALS Scan, Inc. v. Digit. Serv. Consultants, Inc.*, 293 F.3d 707, 710 (4th Cir. 2002); *Beyond Sys., Inc. v. Realtime Gaming Holding Co.*, LLC, 878 A.2d 567, 580 (Md. 2005). However, "[b]oth the Maryland [Supreme Court] and the Fourth Circuit have held that it is not 'permissible to simply dispense with analysis under the long-arm statute.'" *Orbita*, 606 F. Supp. 3d at 247 (quoting *Pandit v. Pandit*, 808 F. App'x 179, 185 (4th Cir. 2020)); *see also Mackey v. Compass Mktg, Inc.*, 892 A.2d 479, 493 n.6 (Md. 2006) ("We did not, of course, mean by [our holding in *Realtime*] that it is now permissible to simply dispense with analysis under the long-arm statute."); *Dring*, 423 F. Supp. 2d at 545. "Moreover, the [Maryland Supreme Court] has recognized that there may be cases in which the facts satisfy constitutional due process but do not satisfy Maryland's long-arm statute." *Dring*, 423 F. Supp. 2d at 545 (citation omitted). Therefore, the Court's personal jurisdiction assessment must "begin with analysis of the long-arm statute." *Id.*

Under Maryland's long-arm statute,

> [a] court may exercise personal jurisdiction over a person, who directly or by an agent:
>
> (1) Transacts any business or performs any character of work or service in the State;
>
> (2) Contracts to supply goods, food, services, or manufactured products in the State;
>
> (3) Causes tortious injury in the State by an act or omission in the State;
>
> (4) Causes tortious injury in the State or outside of the State by an act or omission outside the State if he regularly does or solicits business, engages in any other persistent course of conduct in the State or derives substantial revenue from goods, food, services, or manufactured products used or consumed in the State;
>
> (5) Has an interest in, uses, or possesses real property in the State; or

(6) Contracts to insure or act as surety for, or on, any person, property, risk, contract, obligation, or agreement located, executed, or to be performed within the State at the time the contract is made, unless the parties otherwise provide in writing.

Md. Code Ann., Cts. & Jud. Proc. § 6-103(b)(1)–(6). "To satisfy the long-arm statute, a plaintiff must specifically identify a statutory provision that authorizes jurisdiction, either in his complaint or in his opposition to a [Rule] 12(b)(2) motion." *Orbita*, 606 F. Supp. 3d at 247. Maryland's long-arm statute also imposes a limiting condition: "If jurisdiction over a person is based solely upon this section, he may be sued only on a cause of action arising from any act enumerated in this section." Cts. & Jud. Proc. § 6-103(a).

Following analysis of the long-arm statute, the Court must conduct a due process analysis. Two types of personal jurisdiction are recognized under the Due Process Clause: general and specific. *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 592 U.S. 351, 352 (2021). General jurisdiction "extends to any and all claims brought against a defendant." *Id.* at 359 (citation modified). However, "[o]nly a select set of affiliations with a forum will expose a defendant to such sweeping jurisdiction[,]" such as when the forum is a corporate defendant's "place of incorporation" or "principal place of business." *Id.* (citation modified). A business's principal place of business is "where a corporation's officers direct, control, and coordinate the corporation's activities. . . . [it is] the . . . corporation's 'nerve center.'" *Hertz Corp. v. Friend,* 559 U.S. 77, 92-93 (2010). A forum has general jurisdiction over a defendant when the defendant's contacts with the forum state are so "continuous and systematic" to render the defendant "at home" in the forum state. *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 918–19 (2011). It is clear that neither Defendant is "at home" in Maryland and that this Court lacks general jurisdiction over either Defendant.

6

Specific jurisdiction "covers defendants less intimately connected with a [forum] State, but only as to a narrower class of claims." *Ford Motor*, 592 U.S. at 352. "[T]he constitutional touchstone" for specific jurisdiction is "whether the defendant purposefully established 'minimum contacts' in the forum State." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). That is, a defendant subject to specific personal jurisdiction "must take some act by which it purposefully avails itself of the privilege of conducting activities within the forum State." *Ford Motor*, 592 U.S. at 352 (citation modified). Such a defendant's contacts with the forum "must show that the defendant deliberately 'reached out beyond' its home—by, for example, 'exploi[ting] a market' in the forum State or entering a contractual relationship centered there." *Id.* at 359 (alterations in original) (quoting *Walden v. Fiore*, 571 U.S. 277, 285 (2014)). The Supreme Court has held that a defendant may be subject to personal jurisdiction where it has "established a substantial and continuing relationship" with the forum state. *Burger King*, 471 U.S. at 479.

Additionally, "[t]he plaintiff's claims . . . 'must arise out of or relate to the defendant's contacts with the forum[ ]'" in order for the forum to exercise specific jurisdiction of the defendant. *Ford Motor*, 592 U.S. at 352 (quoting *Bristol-Myers Squibb Co. v. Superior Ct. of Cal., S.F. Cnty.*, 582 U.S. 255, 262 (2017)). The phrase "arise out of" indicates a causal relation, while "relate to" "contemplates that some relationships will support jurisdiction without a causal showing." *Id.* at 362. Ultimately, a court's exercise of personal jurisdiction "depends on the defendant's having such 'contacts' with the forum State that 'the maintenance of the suit' is 'reasonable, in the context of our federal system of government,' and 'does not offend traditional notions of fair play and substantial justice.'" *Id.* at 358 (quoting *Int'l Shoe*, 326 U.S. at 316–17).

The U.S. Court of Appeals for the Fourth Circuit has reduced "the due process requirements for asserting specific personal jurisdiction" to a three-prong test considering: "(1) the extent to which the defendant purposefully availed itself of the privilege of conducting activities in the State; (2) whether the plaintiffs' claims arise out of those activities directed at the State; and (3) whether the exercise of personal jurisdiction would be constitutionally reasonable." *UMG Recordings, Inc. v. Kurbanov*, 963 F.3d 344, 351–52 (4th Cir. 2020) (citing *Consulting Eng'rs Corp. v. Geometric Ltd.*, 561 F.3d 273, 278 (4th Cir. 2009)).

Regarding purposeful availment, the Fourth Circuit has identified several non-exhaustive factors to be considered, including:

> (1) whether the defendant maintained offices or agents in the State; (2) whether the defendant maintained property in the State; (3) whether the defendant reached into the State to solicit or initiate business; (4) whether the defendant deliberately engaged in significant or long-term business activities in the State; (5) whether a choice of law clause selects the law of the State; (6) whether the defendant made in-person contact with a resident of the State regarding the business relationship; (7) whether the relevant contracts required performance of duties in the State; and (8) the nature, quality, and extent of the parties' communications about the business being transacted.

*Sneha Media*, 911 F.3d at 198–99 (citing *Consulting Eng'rs Corp.*, 561 F.3d at 278).

## III.    DISCUSSION

### A. Parties' Arguments

Defendants seek dismissal on multiple grounds, including lack of personal jurisdiction. They argue that Plaintiffs fail to plead any basis for the Court's exercise of personal jurisdiction over them, and that the sole connection this case has to Maryland is that Plaintiffs live in the State. ECF No. 13-1 at 9, 10; ECF No. 24-1 at 8, 10. They assert that there are no allegations of any conduct by Defendants occurring in or directed toward Maryland, nor any allegations that

plausibly show Plaintiffs' claims arise from or relate to any such forum contacts, and thus dismissal is warranted. ECF No. 13-1 at 9–10, 13–14; ECF No. 24-1 at 9–10, 13–14. Defendants also assert that they are foreign companies that do not engage in any course of conduct in Maryland. ECF No. 13-1 at 9; ECF No. 24-1 at 8.

Plaintiffs argue that Defendants' motions should be denied until limited discovery as to the issue of personal jurisdiction is conducted. ECF No. 19-1 at 4; ECF No. 31-1 at 4. They argue that the applicable provisions of Maryland's long-arm statute are §§ 6-103(b)(1), (2), (4), and (5). ECF No. 19-1 at 4; ECF No. 31-1 at 6. Plaintiffs attach to their opposition briefs a copy of the online reservation that Kayley's partner, Alex Parker, made for their stay at the Resort. They assert that this record is evidence that Defendants "did at least some business in Maryland." ECF No. 19-1 at 5; ECF No. 19-2 (Pls. Ex. 1); ECF No. 31-1 at 6; ECF No. 31-2 (Pls. Ex. 1). Plaintiffs assert that they have *prima facie* evidence that Oasis "was marketing its resorts by way of a U.S. corporation acting as its agent." ECF No. 19-1 at 5–6; ECF No. 31-1 at 7; *see also* ECF Nos. 19-7 (Pls. Ex. 6); 19-8 (Pls. Ex. 7); 19-9 (Pls. Ex. 8); 31-7 (Pls. Ex. 6); 31-8 (Pls. Ex. 7); 31-9 (Pls. Ex. 8).

In reply, Defendants argue that Plaintiffs fail in their opposition briefs to provide any admissible support to establish personal jurisdiction over them. ECF No. 27 at 3–5; ECF No. 36 at 2–4. They also point to Oasis's legal notice, provided by Plaintiffs, *see* ECF Nos. 19-11 (Pls. Ex. 10) & 31-11 (Pls. Ex. 10), to assert that entering into a contractual agreement with Defendants was not intended to "avail . . . Defendant[s] of the protections or obligations of Maryland law[,]" ECF No. 27 at 4; ECF No. 36 at 3.

### B. Prima Facie Case of Personal Jurisdiction

Plaintiffs fail to present any facts sufficient to establish a prima facie case for the exercise of personal jurisdiction over Defendants in this forum. Neither Defendant is "at home" in

Maryland; no showing has been made or proffered that either Defendant has "continuous and systematic" contacts with the State. *Goodyear Dunlop Tires Operations*, 564 U.S. at 918–19. Each Defendant provides an affidavit establishing that each entity is a foreign company that does not maintain any offices, pay taxes, transact business, or contract to supply goods or services in the State of Maryland. *See* ECF No. 13-2 & 29-1. Plaintiffs offer no facts to suggest that either Defendant "[t]ransacts any business or performs any character of work or service in [Maryland,]" "[c]ontracts to supply goods, food, services, or manufactured products in the State[,]" or "[h]as an interest in, uses, or possesses real property in the State[.]" Md. Code Ann., Cts. & Jud. Proc. §§ 6-103(b)(1), (2), and (5). Nor have Plaintiffs presented any facts to show that either Defendant "regularly does or solicits business, engages in any other persistent course of conduct in [Maryland] or derives substantial revenue from goods, food, services, or manufactured products used or consumed in the State[.]" *Id.* § 6-103(b)(4). And Plaintiffs present no facts to indicate that either Defendant has taken any purposeful act to avail itself of "the privilege of conducting activities" in Maryland. *Ford Motor*, 592 U.S. at 352 (citation modified). Nor do Plaintiffs' claims "arise out of or relate to" any contacts either Defendant had with Maryland. *Burger King*, 471 U.S. at 479 (citation omitted).

Plaintiffs' reliance upon *Choice Hotels Int'l, Inc. v. Madison Three, Inc.*, 23 F. Supp. 2d 617 (D. Md. 1998), is misplaced. In *Choice Hotels*, the plaintiff, a hotel franchisor doing business in Maryland, sued its franchisee, a Massachusetts corporation, and its individual shareholders, who were Massachusetts residents, in the District of Maryland alleging breach of a twenty-year franchise agreement. 23 F. Supp. 2d at 618–19. Defendants moved to dismiss for lack of personal jurisdiction and improper venue. *Id.* at 618. Judge Davis held that this Court had personal jurisdiction over the defendants because (1) the franchise agreement, "which impose[d] continuing

significant contractual duties upon the [plaintiff and defendant corporation], e.g., reporting and payment obligations, . . . constitute[d] 'transacting business' under Maryland's Long-Arm statute[]"; (2) the guaranty executed by the individual defendants contained "language support[ing] the assertion that the individual defendants had notice that a lawsuit under the guaranty could be litigated [in Maryland]"; and (3) even if the individual defendants were "mere[ly] passive investors," (a) their guarantees induced plaintiff to enter an agreement with defendant corporation, (b) plaintiff accepted their guarantees in Maryland, and (c) "the guaranty contain[ed] no choice of law provision" such that Maryland law could "apply to construe its terms[.]" *Id.* at 621.

The twenty-year term franchise agreement at issue in *Choice Hotels* that defined the relationship between the parties is that case is completely unlike the five-day hotel reservation and webpages furnished by Plaintiffs. *See* ECF Nos. 19-2 & 31-2. First, Plaintiffs' claims do not arise from the resort reservation made for the decedent's stay or any other contract between Defendants and the party who made the reservation. Plaintiffs' claims are based on Defendants' alleged negligence, which occurred wholly outside of this forum. The resort reservation and legal notice on the Oasis website cannot be said to impose "continuing significant contractual duties" on Defendants. *Choice Hotels*, 23 F. Supp. 2d at 621. Even if they did, Plaintiffs' claims do not arise from any such contract. The legal notice from the Oasis website merely provides information about the terms and conditions of the hotel reservation. ECF No. 19-11 at 2; ECF No. 31-11 at 2. It states, moreover, that "[a]ny dispute arising from or related to this Website shall be subject to, construed, and enforced by the courts located in the City of Cancun, Quintana Roo, Mexico. Therefore, [website goers] expressly waive any other jurisdiction to which [they] may be entitled for any reason." ECF No. 19-11 at 4; ECF No. 31-11 at 4. It also contains a choice-of-law provision stating that the website shall be "governed and construed according to the law of [Mexico]." *Id.* This gives

11

no indication that Defendants expected online reservations to give rise to litigation in Maryland. And even if Kayley and others made online reservations at the Resort from Maryland, that fact alone offers no support for finding personal jurisdiction over Defendants in this forum. The Fourth Circuit has made clear that "the interactive nature of [a] website and the ability of a forum plaintiff to make a reservation through the website" do not, standing alone, demonstrate purposeful availment. *See Fidrych v. Marriott Int'l, Inc.*, 952 F.3d 124, 141 (4th Cir. 2020) ("In our view, the mere fact that the website is accessible in a given state does not mean that Marriott is targeting its activities at that state.").

In sum, the Court finds no prima facie basis for this Court to exercise personal jurisdiction over either Defendant. Accordingly, the Complaint must be dismissed.

## C. Jurisdictional Discovery

"[D]istrict courts have broad discretion in [their] resolution of discovery problems that arise in cases pending before [them]." *Mylan Lab'ys, Inc. v. Akzo, N.V.*, 2 F.3d 56, 64 (4th Cir. 1993) (citation modified). In cases "where the record suggests some indicia of personal jurisdiction," courts may order "limited jurisdictional discovery . . . to ascertain more facts." *Maryland v. Exxon Mobil Corp.*, 406 F. Supp. 3d 420, 448 (D. Md. 2019). *See also Armstrong v. Nat'l Shipping Co. of Saudi Arabia*, Civ. No. ELH-13-03702, 2015 WL 751344, at *14 (D. Md. Feb. 20, 2015) ("In some cases, where a plaintiff has either established a prima facie case, or the record contains some indicia of personal jurisdiction, limited jurisdictional discovery may be warranted."). It is also "within [a court's] discretion [to] deny[] jurisdictional discovery" where "a plaintiff offers only speculation or conclusory assertions about contacts with a forum state," *Carefirst of Md.*, 334 F.3d at 402 (citation omitted), or "where a plaintiff's claim of personal jurisdiction appears to be both attenuated and based on bare allegations in the face of specific

denials made by defendants," *id.* at 403 (quoting *Rich v. KIS Cal., Inc.*, 121 F.R.D. 254, 259 (M.D.N.C. 1988)). *See also Reynolds & Reynolds Holdings, Inc. v. Data Supplies, Inc.*, 301 F. Supp. 2d 545, 554 (E.D. Va. 2004) ("The court does not abuse its discretion to deny jurisdictional discovery when the plaintiff raises only 'bare allegations' to dispute defendant's affidavits denying jurisdictional acts or contacts.").

This case is lacking in any indicia of personal jurisdiction with respect to the two foreign corporate defendants named in the Complaint. Defendants' affidavits make clear that any conduct by them that would bring them with the reach of Maryland's long-arm statute or satisfy due process requirements for personal jurisdiction is implausible. *See* ECF No. 13-2 & 29-1. Instead of facts, in opposition, Plaintiffs offer bare speculation and conclusory claims about Defendants' activities. Such speculation and baseless claims are inadequate to support a request for jurisdictional discovery.

Plaintiffs' reliance on *Swarey v. Stephenson*, 112 A.3d 534, 555 (Md. Ct. Spec. App. 2015), is misplaced. In *Swarey*, appellants filed suit after "f[alling] prey to purportedly false asseverations about investment opportunities in undercapitalized shell companies owned and operated by [appellees]." 112 A.3d at 539. The Maryland circuit court dismissed the case for lack of personal jurisdiction. *Id.* at 540. The Maryland Court of Special Appeals reversed, however, concluding that "the circuit court abused its discretion in failing to" allow the appellants jurisdictional discovery. *Id.* It further held that appellants' "numerous exhibits . . . establish[ed] *prima facie* that: (1) the [a]ppellees maintained long-term business relationships with Maryland residents and entities; (2) [a]ppellees' solicitations resulted in the [appellants] sending approximately $3,700,000.00 to the out-of-state [a]ppellees via checks and wire transfers; (3) [a]ppellees regularly communicated with the [appellants] in Maryland by mail, e-mail, and telephone; (4)

[a]ppellees sent emails to parties in Maryland soliciting investment business; (5) and [one of the appellees] sent joint venture agreements to the [appellants] to be executed in Maryland." *Id.* at 558. Plaintiffs argue that they have similarly "submitted exhibits that . . . establish *prima facie* facts indicating [that Defendants have] maintained long term business relationships with Maryland residents and entities." ECF No. 19-1 at 8; ECF No. 31-1 at 9. They have not. At most, Plaintiffs' exhibits show that Kayley's partner made an online reservation at the Resort, *see* ECF Nos. 19-2 & 31-2, and that Oasis advertised its resorts to a general audience through U.S.-based marketers and websites accessible in Maryland, *see* ECF Nos. 19-7, 19-7, 19-9, 31-7, 31-8, 31-9. Neither fact indicates of personal jurisdiction because neither reflects any effort by Defendants to target this forum.[1] *See, e.g.*, *Brighter Sky Prods., LLC v. Marriott Int'l, Inc.*, No. 5:17-CV-03254, 2018 WL 2248601, at *6 (S.D.W. Va. May 16, 2018) ("A streamlined capability to make a reservation at a Marriott hotel anytime, anywhere [from a semi-interactive website], is not a sufficient contact with West Virginia to sustain personal jurisdiction within the traditional bounds of fair play and substantial justice."); *Androutsos v. Fairfax Hosp.*, 594 A.2d 574, 577 (Md. Ct. App. 1991) (finding that defendant's advertisements in the *Washington Post*, which sought to "solicit[] patronage for its hospital from residents of the Washington, D.C. metropolitan area, which includes Montgomery County[,]" provided some indicia that the defendant was subject to personal jurisdiction in Maryland).

---

[1] The Court acknowledges that the Fourth Circuit applies a "sliding scale model . . . to help determine when a defendant's online activities are sufficient to justify the exercise of personal jurisdiction." *UMG Recordings*, 963 F.3d at 352–53. However, the Fourth Circuit also emphasized that, "[r]egardless of where on the sliding scale a defendant's web-based activity may fall, . . . 'the touchstone remains that an out-of-state person have engaged in some activity *purposefully directed* toward the forum state . . . creat[ing] a substantial connection with the forum state.'" *Id.* (second alteration in *UMG Recordings*). Hence, the Court need not determine where on the sliding scale Defendants' internet activity falls to conclude that Plaintiffs have failed to present any indicia of personal jurisdiction.

For the foregoing reasons, the Court finds that Plaintiffs have not made any sufficient showing to justify jurisdictional discovery.

## IV.    ORDER

For the foregoing reasons, it is by the United States District Court for the District of Maryland hereby ORDERED that Defendants' Motions to Dismiss (ECF Nos. 13 & 24) are GRANTED, and Plaintiff's Motions for Limited Discovery (ECF Nos. 20 & 32) are DENIED. And it is further ORDERED that Plaintiff's Complaint is dismissed without prejudice.

The Clerk SHALL CLOSE this case.


 3/30/26                                                        _____
Date                                                            Matthew J. Maddox
                                                               United States District Judge

15